We'll hear argument next in Case 19-635, Donald Trump v. Cyrus Vance. Mr. Sekulow? Thank you, Mr. Chief Justice, and may it please the Court. No county district attorney in our nation's history has issued criminal process against the sitting President of the United States, and for good reason. The Constitution does not allow it. Temporary presidential immunity is constitutionally required by Article II, and accordingly, the Supremacy Clause defeats any authority the DA has under state law as to the President. The Second Circuit is wrong. It should be reversed. If not reversed, the decision weaponizes 2,300 local DAs. An overwhelming number of them are elected to office and are thereby accountable to their local constituencies. The decision would allow any DA to harass, distract, and interfere with the sitting President. It subjects the President to local prejudice that can influence prosecutorial decisions, and to state grand juries who can then be utilized to issue compulsory criminal process in the form of subpoenas targeting the President. This is not mere speculation. It is precisely what has taken place in this case and with this subpoena we challenge. In the argument just concluded, we asserted that the subpoenas did not serve a legitimate legislative purpose, and they were burdensome. Yet the DA copied, almost verbatim, the House Oversight Committee subpoena with an additional 13 words which seek the President's tax returns. How revealing. The exact same language, utilized by two congressional committees, would subsequently be copied by the New York County District Attorney, covering the exact same documents, and sent to the exact same recipients, yet purportedly for two completely different reasons. Under Article II, or the heightened scrutiny standard under Nixon, the subpoena we challenge today cannot survive. As the Second Circuit concluded, and the DA represents, the President is being investigated for potential criminal violations in a state grand jury proceeding with a local DA issuing coercive criminal process against the President. This he cannot do. Thank you, Mr. Chief Justice. Counsel, for all that, you don't argue that the grand jury cannot investigate the President, do you? We did not seek to have an injunction, as was the case involving Vice President Agnew, in enjoining the grand jury. We have targeted the utilization of the temporary immunity here to the subpoena. That's correct. Well, in other words, it's okay for the grand jury to investigate, except it can't use the traditional and most effective device that grand juries have typically used, which is the subpoena. It can't use a subpoena targeting the President, and under his Article II responsibilities and the Supremacy Clause, that, is our view, would be inappropriate and unconstitutional. So we have not challenged the injunction. I don't understand. Your theory, in terms of distraction and all that, would seem to go much farther than resisting the subpoena. I don't know why you don't resist the investigation in its entirety, or why your theory wouldn't lead to that. Well, our position is that criminal process against the President, and that's what we're talking about, that's what's before the court, criminal process targeting the President is a violation of the Constitution. We did not seek to enforce an injunction or seek an injunction against the grand jury investigating the situation with the President. You focus on the distraction to the President, but I don't know why, in Clinton v. Jones, we were not persuaded that the distraction in that case meant that discovery could not proceed. And, you know, there are different things that distract different people, but I would have thought the discovery in a case like Clinton v. Jones, even though civil, would be distracting, as you argue the grand jury proceedings are here. Well, Clinton v. Jones, of course, was in federal court. This is in state court. Clinton v. Jones was a civil case. This is a criminal case. And as this court noted on page 691 of its opinion, if in fact the Clinton v. Jones case had originated in a state court proceeding, it would raise different issues than separation of powers, concerns over local presidents. And in footnote 13, this court said that any direct control by a state court over the President may implicate concerns that are different. They need to branch disputes under separation of powers. So it would be a... Mr. Thomas? Yes, counsel. Just a couple of questions. I'm interested in whether or not you can point us to some express language at the founding or during the ratification process that provides for this immunity. Well, there's a couple. There was a colloquy between ultimately Vice President Adams and Senator Ellsworth where they talked about process against the President and they took the position that any process against the President would be constitutionally problematic. Thomas Jefferson, of course, wrote in the letters he had regarding subpoenas that were issued in the Byrd trial that allowing local magistrates to banter about a sitting president from north to south and east to west would interfere with the President's responsibilities. And as this court in the previous argument just stated, the burdensome nature of this is categorical. You can't just look at the one subpoena. It is the potential for 2,300 DAs or just 1% of them, 23 DAs issuing process against the President. But the concern over interference from our founding with the President's responsibilities was discussed, and that's why in the Constitution there's process to deal with it. Does it make a difference when a subpoena goes to a third party? Certainly not here. Number one, the respondents have either forfeited or waived it. They have conceded in their brief that they are seeking the President's documents. These are the President's documents. He is the real party in interest, and he has the burden, including review with his counsel over any existing privileges and what these documents might entail. Thank you. Thank you, Justice Thomas. Justice Ginsburg? We have said in the grand jury context that the public has a right to every man's evidence. Is it your position that that is safe for the President, every man's evidence, safe for persons protected by privilege? And there is no privilege involved here. These are non-privileged, non-confidential papers. So is the grand jury right to every man's evidence exclusive of the President, every man except the President? That's one question. And then I wanted you to answer specifically. Paula Jones has held that the President was not immune from civil suits of conduct occurring before he took office. If Paula Jones had sued in state court rather than federal court, would Clinton have had absolute immunity? Well, the second question first, if I might, Justice Ginsburg. This court in Clinton against Jones said that if the case was brought in state court, it would raise different issues. Concerns over local prejudice. It was different than the separation of powers issues at play. It was issues involving the Article 2 and the Supremacy Clause. So the court said that on pages 691 and footnote 13. With regard to every man's evidence, this court has long recognized that the President is not to be treated as an ordinary citizen. He has responsibilities. He is himself a branch of government. He is the only individual that is a branch of government in our federal system. Our position is that the Constitution itself, both in structure and text, supports the position that the President would be temporarily immune from this activity from a state proceeding while he is the President of the United States. Justice Breyer? Every man's evidence excludes the President. If I may, Mr. Chief Justice. Justice Ginsburg, it's not that it excludes the President. The President is not to be treated as an ordinary citizen, and this is a temporary immunity. This is for while the President's in office, and we think that is required by the Constitution. Thank you. Justice Breyer? Well, you make a point of the 2,300 district attorneys, but of course in Clinton v. Jones there might be a million, I don't know, tens of thousands of people who might bring lawsuits. Perhaps all of them were unfounded, but they could file the paper. Why isn't it sufficient just to apply ordinary standards? I gather ordinarily any person who gets a subpoena can come in and say it's unduly burdensome. And what counts as unduly burdensome for a doctor who's in the middle of an operation might be very different from a person who's a salesman. And similarly for the President, all the factors you raise could come in under the title unduly burdensome. So why not just go back? Let the President say, I'll show you precisely how this is burdensome. I'm going to spend time, effort, working all these things out, figuring out what they mean, et cetera. And if he shows undue burden and lack of connection, he wins. And otherwise not. That's true of every person. That's Clinton v. Jones. Why not the same here? Justice Breyer, the hypothetical you just gave I think proves the point. By the time you were to prepare, review, analyze the various requests, just in these three cases that we have today shows the burdensome nature. And then to require the President of the United States, as you raised in your opinion, a concurring opinion in Clinton v. Jones, that burden is being met just by us being here. But to require the President to have to respond to each and every state district attorney that would like to... No, he would hire you. And he'd hire a lawyer to list what the burdens are. That wouldn't take a lot of time. And then he wouldn't be burdened because you'd go in and say what the burdens are. And if you're right, you win that case. They are saying the other side, there are no burdens here. You say there are. So send it back and let them figure out what they are. I think doing that establishes the problem with an analysis of a case-by-case analysis. For instance, in this very case, in this subpoena found on page 118A and 19 of the petition appendix, there's a list of documents that are extensive. You would have to meet with the President of the United States. I mean, could you imagine just for a moment, Justice Breyer, that I, and you said, let's assume the President were to hire me, that I'm going to call the President of the United States today and say, I know you're handling a pandemic right now for the United States, but I need to spend a couple of two to three hours with you going over a subpoena of documents that are wanted by here, the New York County District Attorney. I know you're busy, but can you carve me out two hours? Justice Alito? Are there at least some circumstances in which the U.S. Constitution would permit a local prosecutor to subpoena records containing information about a sitting President? So think of this situation. Suppose that the prosecutor has good reason to believe that the records contain information that is not available from any other source about whether a third party committed a crime and suppose that waiting until the end of the President's term would make the prosecution of that crime impossible or at least very difficult. Would you say that at least in that circumstance it would be permissible for the grand jury subpoena to be enforced? In a state court proceeding the issues of time and burden are still there. Now in U.S. v. Nixon that was a case where the President was a witness and the documents were asked for and  in that case it was very clear that the President was a witness and the attorney, the independent counsel there Leon Jaworski specifically stated to this court that the President was not a target. So if we had a pure witness standpoint, while it's a different case, the same constitutional principles would be at play but here we're talking about criminal process targeting a President. Well was the answer that that would be permissible if the prosecutor were willing to say that the President was not a target, whatever that means? Well it would mean that it's constitutionally permissible. It would raise different issues for the President to consider but constitutionally I think that we have to be, I have to be very clear here that constitutionally under Article II and the Supremacy Clause as to a state court proceeding here, we think even as a witness it raises serious issues. Obviously a very different case than this but serious issues nonetheless. Thank you Counsel, Justice Sotomayor Counsel it seems that you're asking for a broadness of immunity that Justice Thomas pointed out is nowhere in the Constitution and in fact the Constitution protects against Presidential interference with state criminal proceedings it doesn't allow the President to pardon offenders for state prosecutions or state criminal convictions and yet I find it odd that you want us to rule that there's essentially an absolute immunity from investigative powers, the height of the state's police powers and that we would permit a prosecution to be prosecuted by a private litigant, which we did in Clinton. Prosecutors have ethical obligations with respect to grand jury investigations they have to keep those investigations secret. They can be prosecuted if they leak that information Don't we usually presume that state courts and state prosecutors act as they should and in good faith? Even if you were to assume that... And doesn't the President always have the opportunity to show that a particular subpoena in fact was issued in bad faith? The President was given that opportunity here and an affidavit I understand was filed under seal setting forth the reasonable grounds for the investigation I'm not sure why he's entitled to more immunity for private acts than he should be for public acts Well he's the President of the United States He is a branch of the federal government We only give judicial officers and congressional officers immunity for acts within their official capacity If they don't if judges sexually harass someone, we've said that's not within judicial functions, they can be sued If congressmen do the same thing they can be sued So my question still comes, you're asking for a broader immunity than anyone else gets We're asking for a temporary... I will We're asking for temporary presidential immunity I would point out that under New York state law, witnesses before a grand jury are not sworn to secrecy They can state that they testified and what the nature of their testimony was. I'd also like to point out that there are hundreds of members of the United States Congress and a hundred members of the United States Senate There is one President Justice Kagan? Mr. Shapiro, you've said that a number of times and made the point, which we have made that presidents can't be treated just like an ordinary citizen but it's also true, and indeed a fundamental precept of our constitutional order, that a president isn't above the law From our first days, Chief Justice Marshall told Thomas Jefferson that he could be subpoenaed, he could be examined as a witness he could be required to produce papers So I guess going back to Justice Breyer's question, why isn't the way to deal with these two things that the president is special, but that the president is like an ordinary citizen in that he's subject to law is to say the president can make these usual objections that a subpoena recipient can make about harassment or about burden and the courts in reviewing those of course should take seriously the president's  with a certain kind of sensitivity and respect due to somebody who is a branch of government Why isn't that the right way to do it? For two reasons. First, and I think the case here is the perfect example Here the district attorney copied verbatim the House Oversight Committee and Ways and Means Committee subpoena verbatim We were just discussing in the previous case the nature of that burden For counsel, the president hiring counsel, for each time he could be subpoenaed as a witness or in this particular case as a target would raise a serious impact on the president's Article 2 functions So we think a categorical approach and it's very specific here state process as to targeting the president's documents in a criminal proceeding should be prohibited Justice Gorsuch? Counsel, I'd like to return to the question of Clinton vs. Jones and how you would have us distinguish it Yes, it took place in federal court, but it was a civil case and as has been pointed out others, there could have been multiple versions of that in multiple different districts across the country So what's different about that? How do we avoid the conclusion there that the president wasn't subject to some special immunity, but here is? I think the nature of the case that we're dealing with here is not in a vacuum itself. There are other cases that the president is dealing with at the same time So what may have been a situation for President Clinton with a lawsuit we have multiple litigation going on, including with the New York Attorney General So I think the supremacy clause issue and the Article 2 issue here is pronounced as this court alluded to in Clinton vs. Jones for that very reason, this idea that local prejudice would impact the president. So the idea that we would wait until there's more of these, we're already here on four subpoenas, or three subpoenas three cases involving multiple subpoenas, much of which covers the same documentation. So I think in fact, Justice Gorchus proves the point. We're here because the House has asked for documents that now the District Attorney is asking for. So we are seeing that in real time, the burdensome nature of what's happening here How is this more burdensome though than what took place in Clinton vs. Jones? I guess I'm not sure I understand. Well, I mean there's a big distinction between a defendant in a civil case and a principal in a criminal case here by the State District Attorney Let me stop you there. Yes, they're they sought the deposition of the president while he was serving Here, they're seeking records from third parties But they're his records from third parties, Justice Gorchus The third party is simply the agent custodian of the president's tax returns on the president's statement of financial conditions. So these are the president's documents that they're asking. And what's to stop them from seeking a deposition of the president? Or, for that matter asking the president to appear before a grand jury. Because if the official vs. unofficial was the deciding factor, and our view is that the initiation of process here interferes with the president's official duty, but if there was going to be this unofficial official distinction put in place well then what stops the local district attorney from having the president testify? Having the president tried? Justice Kavanaugh Thank you, Mr. Chief Justice and good afternoon Mr. Sekulow. Good afternoon Just following up on Justice Gorsuch just explain, if you can, the rationale for having one rule for criminal and another rule for civil. Just assume there's one criminal investigation that's it and just explain the rationale for a different rule there Well, it's not that it's a different rule because in this case, because it's within the context of a state proceeding you have Article 2 concerns and it's the Supremacy Clause issues as this court alluded to in Clinton against Jones that create the issues of concern about local prejudice. But the criminal nature of it creates a burden very distinct from a civil case to be clear. Someone that Well, the idea that you are the subject or target of a criminal case being brought against you is very different than a civil suit where at the end of the day it results in monetary damages, not a loss of liberty. So there's a big distinction between a civil case and a criminal case in that regard and I think that the standard upon which this court should be looking at the president's temporary presidential immunity. We're talking about  targeting the president, this subpoena targeting the president. That's what we're talking about here. It is that burden that is our concern. I think the other side says that the position you're articulating is a bit more consistent with Justice Breyer's concurrence in Clinton versus Jones than with the majority opinion. In his opinion, judges hearing a private civil damages action against a sitting president may not issue orders that could significantly distract a president from his official duties and it's pointed out that that language was not in the majority opinion. What do you think about how we should assess that part? Civil discovery versus criminal processes are two very distinct processes and in a civil context, in a civil proceeding, we have the federal rules of civil procedure in the federal court that govern how that process goes forward and federal judges can take into various considerations especially dealing with the president. This is a state proceeding initiated by the local district attorney against the sitting president of the United States. Our concern here is the nature of the proceeding itself is why we view categorically that subpoena targeting the president and his records here. How do you deal with statute of limitations issues? Statute of limitations issues are decided under New York state law and under New York state law, there would be procedures that could be utilized if in fact the DA were to elect to start a process like that or if there were to eventually be action. Thank you. Thank you, counsel. Thank you, Mr. Duke. General Francisco? Mr. Chief Justice, and may it please the court, at a minimum, a local prosecutor should have to show he really needs the president's personal records to subpoena them for two reasons. First, as the court suggested in Clinton against Jones, state proceedings can pose a greater threat to the presidency. The 2300 prosecutors across the country have a greater emphasis on local interests than national ones. A special needs standard ensures that federal courts balance the prosecutor's local need for information against national interests, including the president's need to do his job. Second, ordinary grand jury rules are not designed to protect Article 2 interests. That's why in Nixon, the court held a federal prosecutor had to show a demonstrated specific need for the information sought. A local prosecutor should at least be required to meet the same standard. As the court has repeatedly said, in no case of this time would a court be required to proceed against the president as against an ordinary citizen. And here the district attorney hasn't tried to meet the special needs standard. General Francisco, we just heard Mr. Sekulow argue in favor of an absolute standard. No circumstances, no how. Your position is that, as you say, at a minimum, the special needs test must be met. Of course, Mr. Sekulow is representing Mr. Trump. You're representing the United States. You're arguing for a more flexible standard. So what was wrong with Mr. Trump's position? Your Honor, I actually think that Mr. Sekulow makes a very strong argument on the immunity issue. We just don't think it's one that the court needs to address, at least until the prosecutor argues and attempts to meet the special needs standard. Here, since the prosecutor hasn't argued and isn't arguing before this court that he meets the special needs standard, there's no reason for the court to address the broader immunity question, and it's the court's ordinary processes to try to avoid those broader and more difficult questions when possible. And here, we think that the special needs standard would fully resolve this case at this stage of the proceedings. Well, in a typical case, with adequate allegations to say that the standard's implicated, you would say that it goes before a court and the court will examine whether or not the criteria you talk about, which I gather is the test under Nixon, are met. And under Mr. Sekulow's standard, it would not immediately go before the court. He was looking for a ruling from us saying that he's absolutely immune so the court would have no business addressing such a case. That's a very significant difference. Well, Your Honor, I think that in both instances, the argument would be available to an article you'd be able to make that argument to an article to federal court. Under our argument, if the court found that the prosecutor hadn't met the Nixon special needs standard, it wouldn't need to address the broader immunity question. If it did find that the district attorney met the special needs standard, it would have to then address the broader immunity question. And all we are saying is that unless and until the special need issue is addressed at the threshold, there's no need to address the broader immunity question in this case. Thank you, Counsel. Justice Thomas? Yes. General Francisco, you mentioned the level of threat to the President or burden on the President. How do we determine that when it's too much? Well, Your Honor, here I think there are a couple of things that you can take into account. First, the fact that we're in state court I think is quite significant. Local prosecutors are necessarily going to put more emphasis on local interests than national ones. It simply reflects the manner in which they rise to office through elections by local relatively homogenous political communities. And in New York State, I would also add that the trial court judges are elected in a similar way. So there you've already got this risk of local prejudice. And so what the special needs standard does is that it ensures that there's a federal court that's available to balance the local interests against the national ones, including the President's need to do his job. And then secondly, it also has to do with the ordinary grand jury rules that would apply to a local prosecutor exercising his authority. Those rules were not designed to and they're not sufficient to protect Article II interests. Since under ordinary grand jury rules, a district attorney never has to make a particularized showing of need. Instead, the burden is on the witness to show that the subpoena can have no conceivable relevance to any plausible subject of an investigation. Now, that is a perfectly appropriate standard in the ordinary case, but the reason why Nixon applies a special needs standard above and beyond the ordinary rules of criminal procedure was because the court recognized that the President is the sole person in whom all Article II powers are vested. And so he is entitled to a measure of protection above and beyond the ordinary rules. And the special needs standard is one of those measures of protection. To point back to Justice Breyer's very persuasive concurrence in Clinton against Jones, I think Justice Breyer correctly predicted that this court would need to develop special protective procedures precisely for the President in the context of litigation like this. Justice Ginsburg? You stress that the states are subordinate sovereigns and they are subject to the supremacy clause, but you don't give any credit at all to the Tenth Amendment and the reserved powers of the state. That's one question that I have. And the... As far as the impact of the President is concerned, I think there's no case more dramatic than the Nixon tapes. Devastating impact on the President. He resigned from office but yet that was okay. So I really don't get it. So, Your Honor... Yes? So, Your Honor, in terms of the Tenth Amendment, all we're saying is that Article II vests all executive power in a single President of the United States. He is the sole person in whom all executive power is vested, and so that necessarily implies that there are limits on what others can do to unduly burden him in his ability to do his job. So all that the special needs standard does is ensure that a prosecutor really needs the President's information before he can enforce that subpoena, since if he can't even show that he really needs the information, he's necessarily imposing an undue burden on the President and creating a serious risk of harassment. And if you multiply that by 2,300 prosecutors across the country, I think that the risk to the Presidency is quite obvious. In terms of the Nixon case, we are actually arguing for the same standard that the Court applied in the Nixon case, the special needs standard. We're just saying that a local prosecutor in state court should at a minimum be required to meet the same standard that the federal prosecutor in Nixon had to meet and show that he really does need the information that he's seeking. Since, again, if he doesn't, it's unnecessarily burdened. The grand jury is an investigatory body. It doesn't make at the outset specific charging decisions while the investigation is underway. It investigates in order to determine should there be specific charging decisions. But you would have them make charging decisions before they investigate, and that seems to be backward. Your Honor, respectfully, no. I would simply urge that you apply the same standard that Judge Wald applied in the Henry Field case, which was a grand jury subpoena issue to the White House where she concluded properly in our view that Nixon's special needs standard ought to apply to grand jury subpoenas. You don't have to make a charging decision, but you do have to show a demonstrated, specific, particularized need for the information pursuant to which you are issuing the grand jury subpoena. Justice Breyer? Thank you. General, I think that Nixon tape case has one thing for you, one thing against you. I think it was a case where executive privilege was asserted. But what's for you, and I think might be more relevant, is in that case the court said, well, there has been first a weighing of the burdensome nature, et cetera, a lot of other things in that, in the lower courts that have decided that it is appropriate to go forward. Now, what I don't see is why you need a special standard more than that here, the ordinary standard. You would need a decision by us that it's reviewable in federal court. I understand that. But I don't see why you have to go beyond that, where the things you're talking about would be taken into account. Your Honor, you are absolutely correct that at a minimum we would need federal court review, and in that regard I would note that the district attorney here agrees that there are Article 2 limits on what he can do, and that those Article 2 limits are in federal court. But respectfully, I would suggest that Nixon stands for more than simply some kind of weighing of interest. Nixon applied the special needs standard, and it said that the prosecutor did in fact have to show a particularized need for the information. That's all that we're suggesting ought to apply. Wasn't that in the context of an assertion of executive privilege? Excuse me, Your Honor? Wasn't that in the context of an assertion by the president of executive privilege? Yes, Your Honor, it was, but litigation about private conduct is also burdensome, and as the court recognized in Clinton against Jones, the president might well need more protection in state court than he gets in federal court precisely because of the risk of local prejudice, and that's why the court reserved judgment on that question. So I think when you put those two things together, it does make it entirely appropriate to hold a local prosecutor in state court to the same standard as the federal prosecutor would tell you in the Nixon case. And indeed, even if you were to take the district attorney's own case-specific test, I think you would need the special needs standard. After all, we don't typically get discovery into a grand jury proceeding. So the only way to prove that the prosecutor is issuing an unduly burdensome subpoena or issuing a subpoena in bad faith is to require some kind of showing of special needs. After all, why would a local... Justice Alito? And, General, could you explain in more specific terms how you think this showing of special need would be carried out in district court? I assume that the prosecutor would have to make some kind of...would have to reveal what was being investigated and why this particular information was needed for or essential for the investigation. Now, would that be done... would that be reviewed by the judge ex parte? Would it be available to whoever the sitting president is to object to that, to review it and object to it? Your Honor, it's difficult to answer that question in a vacuum because I think it would very much depend on a particular case, but let me make my best stab at it. I think that in order to have meaningful judicial review, you would need...the prosecutor would need to make public as much as could responsibly be made public so that the president would have an opportunity and the president's lawyers would have an opportunity to make their case on the particular facts. If there is a certain amount of evidence that really cannot responsibly be made public, then I think it would be appropriate to consider ex parte proceedings or filings under seal. In all events, we think that that's the type of assessment that needs to be made when you're talking about subpoenas, unprecedented subpoenas like this one, that are from state and local prosecutors targeting the president of the United States. The other place I would point you to is again Judge Wald's very good opinion for the D.C. Circuit in the Enri Field case where she does walk through in some amount of detail and unpack how the special needs standard applies to grand jury subpoenas. How essential must the information be in order to meet this special needs standard? Does it have to be absolutely indispensable, not available from any other source by any conceivable means or simply very useful? Your Honor, it's probably somewhere in between those two things. I think it's got to be critical to the charging decision so it can't just be marginally useful or merely duplicative or interesting to a tangential side issue. It does have to be critical to the charging decision. If the information is readily available elsewhere, I don't see how a prosecutor could meet the special needs standard. If the information he currently does have is sufficient for him to make a responsible charging decision, I also don't think how he could meet the special needs standard. I guess I would put it somewhere between. Justice Sotomayor? General, there's always danger in taking a doctrine adopted for one set of needs and that has to do with needs that are balancing what is clearly recognized in law as executive privilege versus the needs for the proceeding at issue and transplanting it to a situation that's totally different where we're not talking about a claim of executive privilege and we're not talking of executive immunity. We're talking about private activities that predated the president's tenure. Why are we using all that transplanted language and why don't we get to a standard that takes care of what you're worried about which is harassment and interference and simply ask whether the investigation is based on credible suspicion of criminal activity and whether the subpoena is reasonably calculated to advance that investigation. A standard that looks to whether there is a good faith basis for the state prosecutor's actions and whether the subpoena is reasonable in its scope and burdens. I don't understand why that sort of standard is inadequate especially for a proceeding that involves secrecy like a grand jury subpoena. For two reasons, Your Honor. First, for the reasons that I think Justice Breyer did persuasively explain in Clinton against Jones, even litigation about private conduct can be quite burdensome and that is particularly so when you're talking about private conduct that's being litigated in state court pursuant to state procedures. So I think that's why he correctly predicted that this court would need in future cases to develop special protective procedures precisely in this context. And secondly, I think that the special protective procedure that we are proposing here is necessary even under Your Honor's general approach. After all, why would a prosecutor take the unprecedented step of issuing a subpoena to the President of the United States for personal records from a local prosecutor if he can't even show that he really needs the information that he's seeking? If he can't make that showing, I think there is a pretty good reason to be a little bit suspicious. After all, very surprised... Justice Kagan? General, a couple of times now in response to Justice Breyer and Justice Sotomayor, you've explained why we should use the standard from litigation about private conduct is also burdensome. But the point about executive privilege cases, it's not that it's burdensome. I mean, the critical factor is the weighty interest that a President has in communicating with advisors on official matters, often about national security, often about military matters, and the need for confidentiality in that. And that's why the Nixon standard was developed. Not because of generalized ideas about burdensomeness, which can be dealt with in other ways. Again, why should that standard be used here? Respectfully, Your Honor, because I think that they're parallel interests. Executive privilege, you are right, is meant to protect the confidentiality of communications, but Article II more generally is meant to protect the President from being unduly burdened in his ability to carry out his responsibilities. And I think that's particularly necessary when you're talking about state court proceedings by the many, many 2,300 local prosecutors across the country who, again, are more responsive to local political constituencies and local interests than national ones. So I think that when you look at Article II... ...this heightened standard in order to take account of burdensomeness. Burdensomeness is something that can be addressed in any subpoena. And I'm sure that courts, when it gets to the President and the special responsibilities of the President, will address those interests with respect, with sensitivity, especially if we tell them so. So why would you need this heightened standard that is meant to protect confidential communications about official government business? For two reasons, Your Honor. First, because under the ordinary grand jury rules, the only question as to burdensomeness is whether the subpoena has any conceivable relevance to any plausible subject of investigation, and therefore is unduly burdensome. And secondly, I think that judgment has to be made by federal courts, not state courts, because state courts, like local prosecutors, are going to be more responsive to local interests. After all, in New York State, trial court judges, like the district attorneys, are elected in partisan elections. So all we're saying is that this is the type of assessment that needs to be made in federal court, and the most appropriate and easy-to-apply standard is the standard that you've already been applying for 50 years under the Nixon case. And we think that... Thank you. Counsel, Justice Gorsuch? Counsel, I'd like to just explore a little further how this standard that you're proposing would play out in practice. I suppose you'd have a local prosecutor saying, I'm investigating a tax infraction. And the best and maybe only evidence of that potential infraction are the tax records in the possession of the potential defendant. Why wouldn't that meet the special heightened test that you proposed in every case? And if it does, then what have we achieved? Well, Your Honor, I think it would depend on who the potential defendant is. If the potential defendant is the President of the United States, here the district attorney doesn't contest the fact that he cannot indict the President of the United States until after he leaves office. So he wouldn't be able to show that he needs the information now in order to indict the President of the United States. Of course, if the potential defendant is somebody else, then it might start looking closer to the Nixon case itself where the special counsel was involved. So that would, in fact, be a relevant consideration under the special needs standard. I guess I didn't follow that last portion of it. Let's say the infraction is by a corporation or some entity and the prosecutor is going to say we need these materials in order to determine whether there is an infraction. Why wouldn't that qualify under your standard? I think that would certainly be a relevant thing to take into account under our standard. And if he actually met the special needs test with respect to the information and found that it was really necessary in order to bring charges against that third party, he may well meet the special needs standard and then you'd have to address the broader immunity questions. And this particular... How much showing a special need is required under your standard? The prosecutor says I have some reasonable suspicion that there's a tax deficiency by some entity. Is that enough? Your Honor, I think it's more than that. I think he's got to show that the information he's seeking is critical to him responsibly making a charging decision. That he can't get that information from somewhere else and the information that he does have is insufficient. It's essentially the same standard the court applied, this court applied in Nixon, the D.C. Circuit applied in Refield's case. It's not like it's a hard and fast bright line rule, but it is an administrable rule that courts have been applying for some 50 years now. Thank you, counsel. Justice Kavanaugh? Thank you, Mr. Chief Justice and good afternoon, General Francisco. Good afternoon. I want to follow up on Justice Thomas and Justice Kagan and really zero in on what the Article 2 interest is before we talk about what standard. I think in Justice Breyer's concurrence in Clinton against Jones, he referred to the interest in time and energy distraction, which he drew from Nixon versus Fitzgerald, a different Nixon case, as an independent Article 2 interest that is distinct from distortion of official decision making, which would be more the executive privilege kind of interest. Is that the Article 2 interest you're zeroing in on, or is it something else? Your Honor, respectfully, I think it's both of them, and as I read Justice Breyer's opinion, he likewise understood it to be both of them. The whole idea is that Article 2 vests all executive power in a single person, and that necessarily means that others can't unnecessarily hobble or debilitate that person in his ability to responsibly carry out his duties. So the whole point of the special needs standard is to ensure that others, including prosecutors, can't unnecessarily impede the President in carrying out his responsibilities, so at a minimum they have to show that they really need the information that they're seeking, since if you have 2,300 prosecutors that are unnecessarily hitting the President with subpoenas, and none of them can actually show they really need that information, you're necessarily going to be unable to effectively carry out the Article 2 duties that the Constitution entrusted him and did him alone on behalf of the entire country. Thank you, Counsel. Mr. Dunn? Mr. Chief Justice, and may it please the Court, there are two principles at issue in this case. One is the central role of the President in the functioning of our national government, and the need to avoid interfering with the President's ability to carry out those important duties. The other principle is that under our Constitution, when a President acts as a private individual, he or she has responsibilities like every other citizen, including compliance with legal process. In particular, this Court has long held that American Presidents are not above having to provide evidence in response to a law enforcement inquiry. We're mindful that as a state actor, our office cannot investigate a President for any official acts, and that we cannot prosecute a President while in office. But here, we're talking about a subpoena sent to a third party concerning private conduct by a variety of individuals and businesses. Yes, one of them is a President, but no one's been targeted or charged with anything. There's no claim of any official acts or any executive privilege. As the Courts below found, the subpoena imposes no Article II burden whatsoever, and was not born of any political animus or intent to harass. Instead, it was prompted by public reports that certain business transactions in our jurisdiction were possibly illegal. Given those allegations, our office would have been remiss not to follow up. In response, the President asked the Court to overturn 200 years of precedent by declaring he has a blanket immunity while in office from any legal inquiry, even for his prior private acts, even though that could result in a permanent immunity for him and the other parties if the statutes of limitation expire, and even though it could prevent the discovery of evidence that could exonerate the individuals involved. Finally, his novel claim also asked the Court to presume that state actors have a quote, reckless mania that will cause them to quote, relentlessly harass Presidents, and that state and federal courts will allow prosecutors to do so. Of course, there's no historical support for this claim, which flies in the face of federalism. The supposed floodgates have been open for generations, and there's never been a flood. The only thing new here is the subpoena comes from the State, but absent a constitutional burden, that shouldn't lead the Court to abandon its longstanding respect for state criminal proceedings. Thank you, Counsel. You know, we've had the cases this morning, and this case, and they are, in many respects, very similar. In the case of the subpoena itself, they're identical, but I think in other respects, they're really quite different. The separation of powers case this morning involves entities in an ongoing relationship, the House and the President, and issues of this sort, although always very important, come up with some regularity. There's often disputes between the White House and Congress over documents, and almost always they're worked out, because each of those branches have authorities and powers that affect each other. You know, if the Senate asks for documents from the White House, and the White House doesn't give them, then the Senate says, well, we're going to, you know, take our time confirming your nominees, and back and forth. But with respect to local prosecutors, you don't have that ongoing relationship. So the possibility of working something out is far less evident, and if you're doing that, the stakes are, well, it's just a little more difficult because there isn't that ongoing relationship. So shouldn't there be a higher standard before we permit the district attorneys from around the country, but there are also more of them than the two houses of Congress, 2,300 of them, shouldn't there be a higher standard than in the case of the separation of powers dispute? I think our answer to that is yes, and putting aside its relationship or not to the separation of powers analysis, I'd like to address the DOJ's proposed heightened showing standard because we see that, let me put it this way, we see there are three reasons, I think, why the DOJ's new heightened showing proposal doesn't work, and a number of questions in the last argument I think touched on some of these concepts, if I might. First, one problem is that the approach that they're suggesting really reverses the court's prior approach to fact-finding in these types of cases in a way that I think would harm the grand jury process, which I can explain. So again, we agree there should be a heightened showing requirement, but my point is only after a president has already established an actual Article II burden. Otherwise, there's nothing for a court to weigh in the balancing of Article II interests against the need for a legal process, and that balancing and that sequencing, frankly, was both central in both Nixon and Clinton cases. Here... Would you articulate for me precisely what standard you think should apply in your case, and in what sense is it more rigorous than that would apply in the dispute between the White House and Congress? Yes. I think we believe that a prosecutor, if there's been an affirmative showing by a president of an Article II burden, and of course the courts below held that there has not been such a showing here, but if in a different case there was such a showing made, we believe a prosecutor should be required to show, one, an objective basis for the investigation, and two, a reasonable probability the request would yield relevant information. We think language like that would be more consistent with past cases of this court, and with the realities of a grand jury investigation. And frankly, the courts below also already found that we've met that standard here. The problem is that the alternative of requiring a state prosecutor to get permission first from a federal judge for any request relating to a president's business activities would imply, like the one in our enterprises, that a grand jury shouldn't be burdened by procedural challenges and delays because it's a confidential process and not an adversarial proceeding. And the DOJ's new standard just ignores that. Justice Thomas? Thank you, Mr. Chief Justice. Mr. Dunn, you were about to say how DOJ's approach would harm the grand jury process. Would you finish that? Yes, and I think I was just addressing that, Justice Thomas. That is, you know, to require us in any given case to run across the street to federal court and say, by the way, we have an investigation underway. It happens to touch on a president's prior business transactions in which he and others were involved in, and we'd like to get permission to send a subpoena for records that are in either the possession of a president or maybe the president's agents, like his accounting firm here. Again, it completely upends the way that a grand jury process is supposed to work. The second big problem, I think, with the DOJ's analysis is that the language that they've chosen just doesn't work, contrary to what I just said out, because it only applies in the context of a trial subpoena. It calls for a, quote, stringent showing that the request is, quote, directly relevant to central issues at trial and charging decisions. Again, that language just doesn't apply in the context of a grand jury when no charging decisions have been made. So that's why the formulation that we had suggested, I think, would be more consistent with what's needed in a grand jury context. But again, we think that it's utterly unnecessary here to apply in our case because, A, there's already been a finding of no Article 2 burden, and B, we have already met the standard by the district court's finding that our district court has already voted and brought in good faith. What limits a grand jury process in New York? What are the limits? Well, the limits are, I think, the same, basically, as they are in a federal court in most other states, Your Honor. I mean, yes, the recipient of a subpoena who has a basis to argue either a privilege or a burden of some sort has the right, as the president did here, to go into court and make those factual arguments that either it should be quashed or constrained in some fashion. There's a grand jury judge who supervises all grand juries and their activities, who's always available here. But I think the more important point, perhaps, Your Honor, is that, obviously, given the decision of the Court of Appeals below in this case and to address that concern and that footnote in Clinton, at this particular, who has a concern about this kind of impact on Article II duties, now always has the ability to go into federal court and not into state court, which was the main concern in that footnote in Clinton. What if you thought it was the president said it was impossible for him to do his job as opposed to just being burdened with that? Would we have a role to limit or somehow end the grand jury process? Absolutely, Your Honor. I think that's the point of the case specific analysis, is that it gives a court and here, a federal court, to hear a concern like that expressed and if the concern is somehow this shuts my office down or it's a real burden, it's not just a speculative mental  yes, the courts are empowered to impose a wide variety of limitations, including, if you will, to shut a litigation down or shut a subpoena or litigation down. That's the beauty of this court's prior decisions in Nixon and Clinton and others, which have decided consistently to apply the case specific analysis and have rejected the notion that this is best treated with a categorical prophylactic rule. I just think that that's not appropriate here when it's also case specific. Thank you. Justice Ginsburg? The principal objections that have been raised is that when you're dealing with federal prosecutions, it's all controlled by the Attorney General, but here you have 2,300 district attorneys, each armed with grand jury subpoena power. So the control exists in federal courts with the Attorney General at the helm and no one controlling all of these state district attorneys. I understand, Your Honor, and I think really what that gets centrally to is the consistent argument here about the parade of horribles, if you will. If I could address that, I think there's several answers to that concern. First of all, there's really no empirical basis in history for this apocalyptic prediction. The same claim was made and rejected by this court in Nixon and then in Clinton. That, of course, was decades ago and there's not been a flood of subpoenas or litigations or prosecutions of presidents by states or federal prosecutors. Second, as a practical matter, this notion that there are 2,300 prosecutors out there writing with their subpoena pass open, there's just no basis to think that an army of local prosecutors like that would even have jurisdiction over a president, especially for private conduct in the first place. Here, New York City, of course, has a particular connection to the Trump Organization and its financial transactions because it's headquartered here. It's not likely that more than one or many states, much less 2,300 counties, will ever have that kind of connection to a president's private conduct. Third, I think, as Justice Ginsburg, you mentioned in the last argument, this view that there's a reckless mania by local prosecutors contradicts this court's longstanding presumption in favor of regularity and deference to state proceedings. To finish off, the limitation, I think, that you're asking about really comes in the form of the case-specific showing that past cases from this court have established because if there is a concern about the behavior of a local prosecutor, any president, when necessary, but it's been few and far between over the decades, can run now, not just into state court, which Clinton thought could be problematic, but can run into federal court and raise exactly the kind of claim that the president has raised here. That's the limitation. Thank you. Justice Breyer. Thank you. What I agree with you that the two basic principles you said at the outcome are there, every man's evidence versus the constitutional statement that the president is the executive, Article 2, and they conflict. Justice, in the first place, the power of Congress, Article 1 and Article 2 conflict. All right. I would say they don't conflict, but yes, they're in tension. All right. Now, a possible solution is, say, no absolute rule, but just send it to the ordinary system for weighing the needs versus the burdens, and the different sides have to say what they are, and then have that reviewable in federal court. And because of the nature of it, and we could list in an opinion the kinds of things that might not be, or might be relevant, depending on the case. And eventually, with the president, we might review it. All right. Now, all that would take time. But time itself would discourage prosecutors from doing this, which might be good. And time itself would encourage House, Congress, president to work things out in a non-judicial way. All right. I don't put that as being wedded to it. I want to know your reaction. Your Honor, I think what you're describing is exactly what this court held in Clinton, and it's exactly, frankly, what has happened now in this case, which is, yes, in this case, the president decided to pursue his claim of immunity in the federal court versus state court, which is fine and now available, I think, in the future to all presidents. But I think the fact that that is what should happen in the ordinary course and which can happen in the ordinary course is, again, the solution and the limiting principle here, because it does make it clear that there is a remedy and discourages, I would have thought, bad faith impulses by any state or local prosecutor who might harbor such an impulse and provides an outlet that makes sure that it can't get out of control. But, again, that's the beauty of the case-specific analysis. I don't think these things lend themselves to categorical prophylactic rules, and that's an approach from this court from day one. Thank you. Justice Alito? As I understand your proposed standard, there would be available review in federal court, and the prosecutor would have to show an objective basis for the subpoena and the relevance of the subpoena to the investigation. Is that correct? Basically, Your Honor, language like that. I said point two was a reasonable probability that will yield relevant information, but, yes, that's the concept. Okay, reasonable probability. What would be your objection to a somewhat more demanding standard? So, the prosecutor would have to show that the information can't be obtained from another source, or it would be very difficult to obtain it from another source, and the information that, unless the information is obtained right now, as opposed to at the end of the president's term, there would be some serious prejudice to the investigation. Your Honor, I frankly don't think that any of those concepts are foreign to the standard that I articulated, and I think they are relevant, in fact, to the objective basis and relevance points. You know, here, for example, and, again, I think the court below, the district court in particular, heard our explanations, including the fact that the reason why we went to Mazars is not to do an end run around negotiations with the president's lawyers. It's because Mazars, as the outside accounting firm, is, as far as we could tell, the only repository of what might be the most important documents in an investigation like this, which are not just the tax returns, but the surrounding accounting materials and work papers, etc., which shed light on the good faith or not of the transaction. So, my short answer, I'm sorry, is that I think those concepts would be fine and not unduly burdensome in the context of the standard that I set forth. Can I ask you one other thing? Do you think that the adjudication of this in all cases of a similar nature would depend in any way on state law and practice regarding grand jury secrecy? In federal court, the rules of grand jury secrecy are, of course, very strict. States have different rules. Suppose a particular state imposes no restriction on the revelation by a member of the grand jury, or perhaps even by the prosecutor, of the information that is supplied in compliance with a subpoena. Well, Your Honor, I'm not aware of any other states having that kind of lax or non-existent grand jury secrecy rule. I can assure the court that in New York State, our grand jury secrecy laws are at least as strict as under the federal system. But putting that aside, if, in fact, the fact pattern presents to a judge the prospect that the information, in fact, will become public, and the president were to persuade a judge that the publication of the documents that issue would themselves impose some sort of Article II burden or other interference with his executive duties in that given state, I suppose that would be part of the case-specific analysis that the court could understand and take into account in deciding whether there should be some limitation or even a quashing of the subpoena itself. I think that's part of the case-specific analysis. We both know that prosecutors have different... that there are prosecutors who leak all sorts of information, including grand jury information, all sorts of media sources, including specifically the New York Times. If there were a showing that that was a risk, would that have a bearing on this? Your Honor, it's hard for me to... I'm not aware of any kind of real pattern or practice of leaking of actual grand jury materials that are covered by grand jury secrecy. Yes, in all different kinds of offices, there are at times leaks of status of cases and that kind of thing, but I am not aware and our grand jury secrecy rules really prevent prosecutors, I believe, from actually turning over confidential grand jury secrecy materials to... You're not aware of this ever happening? Your office is never requested by media in the New York City area to disclose confidential investigative information? No, well, they ask all the time, Your Honor, and the answer is consistently no, at least as far as I can represent. But what I'm trying to draw a distinction between is people commenting to reporters all the time off the record that kind of thing versus turning over actual materials like voluminous tax returns or other sensitive documents that have been gathered and which are covered by grand jury secrecy. That's what I just don't see happening here, and I think history supports that view. When you refer an article to burden, does that include the burden of harassment, the burden of using subpoenas for political purposes? Yes, Your Honor, I would certainly include that there, and again, there's been an express finding below here that there is a... that there was no harassment or bad faith in our bringing of the subpoena. And Justice Sotomayor? Counsel, did I understand your answer to Justice Alito to be that you are in agreement with the SG that we should impose a heightened need standard, a special need standard? No, Your Honor, I was... I think we're all now calling it the DOJ's lexicon now, the heightened need standard, but I think what I'm articulating is a very different standard in terms of the actual language to be looked at and imposed. Again, I think... If you can, Counsel, because I want to be very precise. If your standard includes what the heightened need standard has, then why not call it what it is, heightened need? There has to be a reason you think we shouldn't call it that, and I don't know that I understand what difference your proposal... I'm sorry, Justice Sotomayor. The concern I have with the DOJ language is, again, calling for a stringent showing that a subpoena request is directly relevant to central issues at trial and other concepts like that. What I'm trying to propose is something I think which is not so strict and which is not limited to charging and trial-related concepts, but which would be workable in the DOJ. And again, whatever the standard is that we're articulating, I want to stress that I believe that we, our office, has met that standard here, even under the DOJ's proposal, because of the findings by the district court. Tell me why the heightened standard would interfere with the grand jury process. Well, I think, Your Honor, among other things, the DOJ's proposed application of its standard, if you read its brief, would confer the same absolute immunity that the President is seeking here. What they say is, since you can't indict while in office, you don't need the documents while he's in office. And frankly, that's an outcome that would apply in every case. No subpoena could pass that test, because they basically say, you know, you have to wait until he's out of office before gathering information because you don't need it in the meantime. So their definition of heightened need says you don't need it while he's in office. Well, that's not workable here. Why not? Because, well, obviously, Your Honor, if we were to wait until a President was out of office in a situation like this, first, it would risk the loss of evidence, the fading of memories, and unavailability of witnesses, which is exactly where the DOJ Moss Memo, of course, specifically contemplated that a President could be subject to a grand jury while in office to avoid losing that kind of evidence. Secondly, and equally important here, no one should forget that we've got an investigation that is looking at the conduct of other people and businesses, and waiting like that would benefit those other participants. They could all end up above the law if the limitations period expires. So delay here is the same as absolute immunity and absolute permanent immunity for the President and others if the statute of limitations expires. That's the problem with the delay. Well, the other side says the statute would be tolled against the President, but you're right, it wouldn't be tolled against other people who may or may not have committed crimes that he may or may not be a part of, correct? Correct. And that's important, Your Honor, for the third parties, but just to address my friend on the other side's comment about the tolling, I'm not aware in state law of any doctrine of tolling that would apply here to protect the state's interests in investigating and potentially prosecuting if necessary down the road. I don't know where that concept comes from, but it's never been articulated by this court. There's no act of Congress which permits that kind of tolling here, and so for us, the statute of limitations is a big concern. Frankly, we've already lost nine months of time in this investigation due to this lawsuit, and again, every minute that goes by is basically without even a decision on the merits here, granting the same kind of temporary absolute immunity that the President is seeking here. Justice Kagan? Mr. Dunn, you've been talking about how to analyze these burdens in a case-specific way, the burdens both in terms of the President's time and in terms of any possibility of harassment of the use of a subpoena for political purposes. Mr. Sekulow said that the burdensome nature of these subpoenas is categorical. That was his term, and I take him to mean that any subpoena interferes with the President's responsibilities or undermines the President in his handling of the office. So what's the answer to that? Your Honor, I'd make three points. I think the fact is that the Court addressed this question, I think, in Clinton and concluded that a President can't realistically be shielded from every sort of private distraction, including some forms of legal process, especially in our modern age. So that's why it's up to a Court to evaluate and protect the President, depending on the circumstances, on a case-by-case basis. Secondly, here, the claim of possible mental distraction is completely speculative, really. It's based on the notion that the President might be worried and distracted about where an investigation might lead someday. It's not based on any actual Article II burden or interference of the sort the Court was asking President Clinton to demonstrate in Clinton v. Jones. And third, I'd say, if that's really the concern, I think it's wrong to think that even a categorical rule here would provide comfort to a distractible President like that. So, for example, nobody suggests here that we should be barred from continuing to investigate the President's prior colleagues. So if we now gather documents from them that reflect past communications with him while he was CEO, are we then supposed to be stopped because it could create a fear in him that the investigation of others might lead him to be accused of something someday? Again, my point is that this speculative mental distress standard is not an appropriate basis to draw a constitutional bright line. That's why the case-specific approach is more appropriate. And speculative mental distress, how about if they really mean political undermining? Well, I mean, that's beyond the can of our office, Your Honor, and as, again, the District Court found, there was no bad faith intended by virtue of our subpoena. So I don't know. It's already been determined here there's no intent to politically undermine, so I don't know how a court could try to evaluate that, and I'm not sure that would be appropriate. Mr. Sekulow suggests that you showed your bad faith by taking the language of the House Oversight Committee's subpoena. Yes, Your Honor, and I think we've tried to address that. I mean, the simple fact is that in 2018, when our investigation started and thereafter, as we've spelled out, there were a series of public disclosures in the press about possibly illegal transactions involving taxes, other financial proprieties, and at the time of the House subpoenas and our subpoena, it was clear that both our office and the House committees were looking at the same public allegations in that regard. In a situation like that, once the House subpoena became public, it's not unusual for an office like ours to model our subpoena language on that which has already been made public from a different source when it's going to the same recipient. It makes it easier on the recipient and the process. There was absolutely no communication between our office and the House about this. There's nothing sinister about it, Your Honor. Thank you. Justice Gorsuch? Counsel, I'd like to return to your colloquy with Justices Alito and Sotomayor because I guess I'm uncertain what the daylight is between the test you're proposing and the test the Solicitor General has suggested. It seems like both of you agree that these questions should be resolved in federal court, and you've suggested that prosecutors should have to demonstrate an objective basis for the investigation and that there's at least a reasonable probability that the information sought will be helpful to that investigation, that it can't be obtained elsewhere, and that it's needed now rather than at the end of the President's term because of some serious prejudice that might take place in between. As I understood your discussion with Justice Sotomayor, you suggested that the difference is the Solicitor General thinks there should be an absolute immunity until the end of the term. I confess I didn't read the brief that way. I read it as suggesting the District Attorney has to show why there's a need for the President's records now rather than at the end of the term, and I understood your discussion with Justice Alito to agree that that would be a relevant consideration. What am I missing? I think, Your Honor, putting aside the language differences which I tried to highlight, I think the most important distinction is what I tried to note at the outset, which is the sequencing of the showings that need to be made because what the DOJ is proposing, as I understand it, is that in the first instance, it has to be the prosecutor who goes to federal court in this instance now and makes an affirmative showing that the standard hasn't met, that there's some objective basis and it can't be obtained elsewhere, etc., etc., and only after such a showing has been made by the prosecutor, according to the DOJ, does the burden then shift to the President to show Article 2 burden, and I think that's what's completely backwards and inconsistent with Nixon and Clinton. I think it's much more appropriate for the President as the moving party, as here, to be required to make a showing, as any other litigant would be the case, again, here we're talking about purely private conduct, to explain why this request somehow impacts not just on a need to gather documents, which is not the case here, but on an actual Article 2 burden, and only once that showing has been made should, I think, the burden shift to the prosecution, consistent with past cases by this court, to explain why, nonetheless, it's still necessary to permit the court at that point to conduct the balancing of apples and apples in terms of coming to the right conclusion in a specific case. So, Mr. Dunn, am I correct in thinking then that you agree that the forum should be federal court, you agree on all the relevant considerations the necessity information that can't be obtained elsewhere, the timing issues, all are relevant considerations, it's just who bears the burden? Yes, Your Honor. Maybe with the DOJ, there's less daylight between us and the President's lawyers, but I think the important point that I would  even if one were to adopt that standard, or even, frankly, I think the DOJ standard, the fact is, we've already met that test given the findings of the courts below. I know you think you win no matter what. I'm just, we have to write a rule that's presumptively of some value going forward and isn't just about one President, but it's about the Presidency. And I'm just trying to understand what daylight actually exists, and is it fair to say that the only daylight that exists between you and the Solicitor General is who bears the burden of proof? I'm not trying to put words in your mouth, I'm trying to understand. I think it is the burden, and the difference in language, which I pointed out to Justice Sotomayor, I think that language, those differences are important because I don't think that the DOJ's language works in a grand jury investigation. Thank you. Justice Kavanaugh? Thank you, Chief Justice, and good afternoon, Mr. Dunn. On that last point that you were talking about with Justice Gorsuch, the difference between the Nixon heightened needs standard, you said it doesn't work in a grand jury. What do you do with Judge Wald's opinion in In re Sealed Case, which took Nixon and did apply it in a grand jury context? Yes, Justice Kavanaugh, I think you mentioned in the earlier argument, the fact remains that the In re Sealed Case was indeed applying the Nixon standard, as the Nixon Court contemplated, to a claim of executive privilege. As has been pointed out earlier today, I think that's a very different analysis to be undertaken for a very different purpose. I don't think one can just simply import that language and apply it. I'm sorry to interrupt. Let's leave that for a moment. The point on the grand jury versus trial, just on that point, Judge Wald's opinion did take Nixon and apply it in the grand jury context. Indeed, even in the grand jury context, when we're talking about a privilege analysis, I think that language is appropriate. At that point, you already have once there's been an affirmative showing that established that there is a privilege to be addressed, then of course, like with any attorney-client privilege, for example, it's necessary for the court then to turn to the demand or the request and the documents that are at issue and evaluate them in light of this. Let's, if we can, move on to the Article 2 issue then. Do you acknowledge that there's an Article 2 interest at stake here? Yes. And what do you think it is? I think it's the Article 2 interest to be free from unreasonable burdens on the duties and obligations of the presidency, and that's the same analysis that was applied in Nixon and in Clinton. Do you think time, what Justice Breyer referred to as time and energy distraction, are appropriate for Article 2 interests? Well, yes, as a matter of degree. Again, that was the court's analysis in Clinton. Recall there that although this court allowed the litigation to proceed, of course, appropriately as I think is the case here, there's a need to make sure that the courts that are overseeing this kind of objection  of what the burdens are, including on a very practical level. I think the Clinton court hypothesized that perhaps a request for actual in-person testimony at trial by a president might be inappropriate. And I think the other side made two distinctions with Clinton, and I want to make sure you have an opportunity to address them. One is the federal state. The other is the civil criminal. On the civil criminal, I suppose one thing I'd like to hear you address is in a civil case, and the court emphasized this in Clinton v. Jones, there's an individual person at stake who has a claim. There's not the same in a criminal context. Obviously, there are different and very important interests there, but not the individual interests. Can you address that? That's one distinction, Your Honor. I suppose on the other side of the coin, there is the important difference that there are potentially thousands or many more potential private litigants out there who are not bound by the kinds of ethical and jurisdictional and other constraints that prosecutors are bound by and to which this court has long paid deference. I think that the reason for concern in a civil context is actually much higher than it should be. Sorry if I can get my last question. On the federal  Article II interest at stake, and you said that there is, it's different, of course, from the executive privilege interest, but there's some Article II interest at stake. I think the other side says it would be odd if the standard were easier to meet for a state prosecutor than for a federal prosecutor. I just want to give you an opportunity to address that. Frankly, Your Honor, I don't really understand that distinction. I think under the analysis that this court has applied before and the one we're talking about now, the same analysis would apply in terms of a case-specific evaluation in the context of particular facts of a particular request. Just to stop you there, you're okay with whatever standard applies to a federal prosecutor in a case where there's an Article II interest also applying to the state prosecutor? I'm not sure exactly what you have in mind, Your Honor. Just the Nixon standard. You're not okay with the Nixon standard, I don't think, but I just want to explore it. No, because of the fact that that was applying to claims of executive privilege, but I think to get to your point, I think what it comes down to is that in the Nixon and Clinton cases, we're talking about Article III versus separation of powers analysis. Here, the analogy is we're balancing federalism and Tenth Amendment concerns about police power of the states against the supremacy clause. It's a different analysis, perhaps, but it's very analogous. Thank you. Counsel, we have time for a little bit of a second round. I guess the thing that I would like to focus on first is this question of how you examine the burden on the president or the presidency. I just don't understand how it works in terms of you or the president being asked to devote a certain amount of time to reviewing, for example, in this case, the 10 years of documents or whatever. Is there supposed to be a hearing where he says, here's what I'm doing. I've got this pandemic thing. China's causing all sorts of trouble. Most presidents throughout their term have a pretty long to-do list. I'm just wondering how it's ever going to be any different in evaluating what that burden is. It seems to me that it would be the same no matter what. You really wouldn't need a particular hearing on that. I guess, Your Honor, when we're talking about in a context of a particular subpoena like this one or litigation or what have you, like in Clinton, again, this court has already decided that you can't shield a president from every sort of private distraction. I just want to emphasize here again that That was in the civil context. The question is whether or not a criminal investigation might be a little bit more distracting. I'm not sure, Your Honor. I'm not sure whether the stigma of a simple secret grand jury investigation, even if it becomes publicly known, is more distracting and stigmatizing perhaps than being accused even civilly of sexual misconduct, which was, of course, allowed to proceed in the civil case involving President Clinton. I'm not sure that, again, the abstract concern about possible mental distraction or even public stigma under this court's prior analysis is sufficient to adopt a new bright-line constitutional rule that forbids any kind of process like this given the history of... It's a little bit of a... That is what the president's personal lawyers advocated. It's not what the Solicitor General advocated, not an absolute rule. Yes, I know, Your Honor,  case is what's happened here, which is a case-specific analysis before a court which, as they do all the time, is able to balance and listen to arguments about burdens, and as here, when the court finds there's no article to burden whatsoever after an opportunity to be heard, that should be the answer, and that's what's happened here. Justice Thomas, anything further? One brief question, Mr. Dunn. There's been much discussion about burdens on the president. I'd like from you a couple of specific examples of what you think a burden would be that actually counts in your analysis on the part of the president. Well, I guess, Your Honor, again, hypothetically, because our subpoena proposes, we say, no burden whatsoever. I understand that. But I think I would, again, point to this court's language in the Clinton analysis where it was observed in passing in the opinion, I think just as dicta, but it was relevant, that if a president was asked to actually appear and testify at trial some day someplace outside of the White House, that might be the kind of thing that you'd say really shouldn't have to happen. I would suggest there among those lines, too, that if a president were to be asked to show up for multiple days of consecutive deposition testimony or something like that, those are practical burdens. Or if the demands were that he show up at a particular time or place that is where there are conflicts and that kind of thing. Again, since we're talking here about private conduct and no executive privilege, what we get to are really practical concerns about impositions on presidential activities. And that's, I think, what we're talking to. Thank you. Justice Ginsburg, anything further? Nothing further. Justice Breyer? No, thank you. Go ahead. Justice Alito? One quick question. I don't know how good this court is about predicting the consequences of some of our decisions, but would you say that the court's prediction in Clinton versus Jones that the decision wouldn't have much of an impact on the presidency has been borne out by history? I guess, Your Honor, my view of the chronology in Clinton v. Jones, I'll try to be brief, is that I think contrary to some people's view of history, I think that the district court, following this court's decision, kept a rather close reign on discovery in that case, and don't forget, later granted summary judgment in favor of the president long before trial. It was only that it came out later, of course, that it turns out that in his brief deposition in a case that the president committed perjury, which is what led to the impeachment proceedings and other travails he had. So I don't think it was this court's opinion or the litigation itself that led to those problems. Frankly, it was his decision to lie under oath. So I think that this court's conclusion in both Nixon and Clinton, that you could not accept the notion there's going to be a parade of horribles, either in a particular case or across the board, still has borne out over history. Justice Sotomayor? I'm not sure that I understood your statement earlier that the only difference between you and the SG, well, there are two differences. One in the articulation of special needs or heightened standards. But you said it's the burden of proof. But you've already conceded to one of my colleagues that there is an automatic burden on the Article 2 clause by subpoenaing a sitting president, period. No, I've not, Your Honor. I'm sorry, but I've not conceded that. All right. What, then, are you conceding when you say there's a burden? I'm conceding. What kind of burden are you talking about? And number three, articulate more precisely what problems you have with the heightened standard that Nixon set in its grand jury subpoena. In my response, I think, to Justice Gorsuch, my concern, what I acknowledged was that, yes, a subpoena like this implicates Article 2 issues and potential burdens, and it's those which have to be weighed in a case-specific analysis. I wasn't conceding that the mere fact of the subpoena imposes, quote, an Article 2 burden. I think that's the question to draw. And, again, getting back to the language question, again, it's the DOJ's language that calls for a stringent showing that a request is directly relevant to central issues at trial and specific charging decisions. And, again, very simply, as a practical matter, no court and no prosecutor could meet that standard because, in a grand jury, one is not thinking about charging decisions or central issues at trial. And that's why I think the simple language that the DOJ is applying in its new heightened showing standard is just not workable. Justice Kagan? Mr. Dunn, on the question of a possible distinction between state prosecutors and federal prosecutors, the President's lawyers have urged that there's a legal difference arising from the supremacy clause. I don't think we've talked about that argument yet. What is your response to that? I think your response, Your Honor, is I alluded to it before and I think all it means is that there is a balance to be struck between, in this case of state prosecutors, the supremacy clause concerns against the rights of states under their police powers and the concepts of federalism and the requirements of the Tenth Amendment to allow the states to exercise their rights, especially in the criminal context, which are so important. So I think that that's the parallel to the balancing in the federal prosecutor context. But I think it's even more important, given the federalism concerns and the fact that state prosecutors, of course, not only do they have the reserved police power of the states, but in context of criminal investigations, a large body of criminal conduct is only prosecutable by the states. So that's the thing that has to be balanced here. Justice Gorsuch? Nothing further. Thank you, Chief. Justice Kavanaugh? Thank you, Chief Justice. I just wanted to ask again, deferral of the investigation until after the presidency, assuming statute of limitations issues were solved, which is a big assumption, I understand. Can you tick off the concerns you would have about that so that we can have those clear? Yes, Justice Kavanaugh. Again, point number one would be the putting aside statute of limitations concern, which I don't think one can discount here, because I don't think it's been addressed ever, obviously, by this court in this context. And that's our paramount concern, to be honest, at this point, because the clock is ticking. But even if that were to be addressed somehow, the risk of over time, by waiting, of losing evidence and losing witnesses and that kind of thing is a very real risk. Again, I think the OLC Moss memo addressed that expressly in saying that a grand jury proceeding should be allowed to proceed. But secondly, here, and it's not unusual, since there are other third parties at issue in the investigation, requiring us to delay because the president is still in office, as to those third parties in gathering important evidence could yield them being above the law if the statute of limitations runs as to them. Thank you. Mr. Dunn, would you like a minute or two to wrap up? Yes, Your Honor. Thank you. Your Honor, the issue presented here today is extremely narrow, but extremely important. We have a state investigation that's well-founded, implicates no official conduct or executive privilege, involves a variety of third parties, faces serious time and poses no Article II burdens. These facts put our subpoena well within the scope of legal process permitted by this court for generations, indeed back to 1807. Past decisions have consistently found that courts already have robust tools to protect presidents from abusive claims or demands. There's no need here to upend precedent or to write a new rule that undermines federalism, especially when such a rule would create a risk that American presidents, as well as third parties, could unwittingly end up above the law. Thank you. Thank you, Counsel. Mr. Seculo, you have two minutes for rebuttal. Thank you, Mr. Chief Justice. Let me start with this, and there's some agreement. The New York District Attorney, New York County District Attorney, acknowledges that their subpoena implicates Article II issues and burdens. They also agree that there is harms that could arise to the presidency. We say those harms have actually existed. The other aspect of this is the ordering. Who carries the burden here? That seems to be the issue that's left open. This court's decision in Cheney answered that very clearly. It said the exacting standard is carried by the party requesting the information, so it would be carried by the respondent in this particular case. There has been no showing and no findings of heightened need standards being met here. I think it's, again, also important to remember, and I think this came up in the context of earlier questioning, there's a different stigma that attaches to criminal process than civil litigation, and I don't think that stigma should be ignored in a case like this. The irony of all of this is that the House of Representatives and the District Attorney issued, essentially, the same subpoenas to the same custodian for the same records. The House said it wants the records so it can legislate not for law enforcement reasons. The District Attorney says he wants the same records for law enforcement reasons. He has no legislative authority. But what's really happening here could not be clearer. The presidency is being harassed and undermined with improper process. That was issued, in our view, for illegitimate reasons. The copying of the subpoena speaks to that. The framers saw this coming, and they structured the Constitution to protect the president from this encroachment. Thank you, Mr. Chief Justice. Thank you, Counsel. The case is submitted.